## Jones *vs.* Letcher.

Ord. Pro.

Case 10.

December 15.

APPEAL FROM MADISON CIRCUIT.

Judge SIMPSON delivered the opinion of the court.

1. In a proceeding by ordinary petition, where the proceeding at law is the appropriate remedy, it is not proper to transfer the case to the equity docket, unless the equitable matter presented as a defense be valid, and one which the party has a right to insist upon.

2. The second section of the act of 1838, limiting actions against sureties, (3 *Stat. Law*, 558,) does not apply to cases where there are devisees and distributees, until five years after the youngest of each class, or persons interested, shall arrive at full age.

3. Where a surety of an executor, in his bond, becomes the surety of the executor for money borrowed to pay a distributee or devisee, and the surety pays the borrowed money, it is in effect a payment as surety in the executorial bond.

4. One surety of an executor who procures another to be bound with him as joint surety, upon his promise to save him harmless, is liable on such promise, and a third surety who is released from responsibility to contribute to the plaintiff in case of loss, is a competent witness to prove the promise.

5. Hearsay evidence, though competent to prove pedigree, is restricted to the statements of deceased persons who were related by blood or marriage to the persons whose pedigree is in question. (1 *Greenleaf on Ev.* 116.) It is not competent to prove who was guardian.

6. Evidence which conduces, though but slightly, to prove a fact in issue, should not be excluded.

7. The legatee having died before the testator, a payment to the residuary legatee, to whom the right accrued under the residuary devise, is a valid payment by the executor.

Letcher instituted an action by ordinary proceedings against Jones, and stated in his petition, that he and a certain Howard Williams had in conjunction with the defendant, as the sureties of Humphrey Jones, jr., executed a bond given by the said Humphrey Jones, jr., as one of the executors of A. Barthe, deceased, William Holloway being the other executor, the executors having executed separate bonds, and that the defendant, to induce the plaintiff and Howard Williams to go into said executorial bond as co-sureties with him, had promised to indemnify them, and in consideration of that promise, they had executed the bond as the sureties of the executor. He also stated that he had, as the surety of said execu-

Case stated.

tor, been compelled to pay two several sums of money, amounting in the aggregate to near four hundred dollars, for which the executor was liable, and that the executor was insolvent, and unable to refund the money to him; he therefore prayed a judgment against the defendant for the amount.

The defendant demurred to the petition and his demurrer was overruled. The objection made to the petition was, that the action had been improperly brought in the name of the plaintiff alone, when it ought to have been brought in the joint names of himself and Howard Williams, the promise by the defendant to indemnify them having been made to them jointly as alleged in the petition. This objection, however, was invalid. Although the promise was joint, yet as the payment had been made by the plaintiff alone, the interest was several, and the doctrine is well settled, that in such a case the action may be brought in the name of the party interested, and it is unnecessary to sue in the joint names of the persons to whom the promise was made. The question whether a verbal promise to indemnify in a case like the present was enforceable under the statute of frauds, was also made. This question is also well settled. Such a promise is not within the statute of frauds, it being an original contract between the parties, and not a collateral undertaking. . (*Chitty on Contracts*, 516, *and the cases cited*.)

After the demurrer to the petition had been overruled, the defendant filed an answer in which he denied that he had made any promise to indemnify the plaintiff. He also alleged that the payments by the plaintiff were made more than five years after the execution of the bond, by the executor and his sureties, and the plaintiff was not liable as surety when they were made, but had been discharged from all liability by the lapse of time. He stated further, that one of the two payments was made by the executor with money borrowed by him, and for the payment of which the executor had executed his own note with

the plaintiff as his surety, and had also executed to the plaintiff a mortgage on some personal property to secure him on account of the liability last mentioned. He prayed that the property contained in the mortgage might be sold and the money arising from the sale might be applied to the payment of the money so borrowed, and made the mortgagor a party to the action.

The defendant before he filed his answer, and subsequently also, moved the court to transfer the action to the equity docket, and to change the proceedings into those that were equitable; which motions were overruled by the court, and an exception taken by the defendant to the decision of the court upon that subject.

1. In a proceeding by ordinary petition, where the proceeding at law is the appropriate remedy, it is not proper to transfer the case to the equity docket, unless the equitable matter presented as a defense be valid, and one which the party has a right to insist upon.

The object of the action was not to obtain a settlement of the executor's accounts, but to enforce the promise of indemnity made by the defendant. For a breach of that promise a proceeding at law was the proper remedy. The answer of the defendant did not contain any equitable defense to the action. The only matter of equitable cognizance which it presented, was contained in that part of it that set up the mortgage executed by the executor to the plaintiff, and prayed for a sale of the mortgaged property. But that matter did not furnish any defense to the action, nor did it constitute a counter claim against the plaintiff. A counter claim is a cause of action in favor of the defendant against the plaintiff arising out of the transactions set forth in the petition, or connected with the subject of the action. (*Code of Practice*, § 152.) The defendant had no right to demand a foreclosure of the mortgage. If he could acquire such a right by substitution, in consequence of a payment of the debt by him for the benefit of the mortgagor, he clearly had no such right when he filed his answer. The action, therefore, was properly commenced by ordinary proceedings, and as the defendant's answer did not present any matter of defense, of equitable cognizance, his motion to transfer the

action to the docket containing equitable proceedings, was properly overruled.

It appeared upon the trial that the widow of A. Barthe, deceased, had renounced the provisions of her husband's will, she being at the time of such renunciation of full age. The testator by his will disposed of all of his estate, and did not die intestate as to any part thereof, as appeared from the provisions of his will, which will was read upon the trial. It also appeared that in February, 1850, the executor, and the plaintiff as his surety, borrowed the sum of two hundred dollars, which was paid over to J. B. Smith, who had married the widow—that sum being due to her by the executor, as a part of her distributable interest in the estate of the testator, her deceased husband; that the plaintiff afterwards, as surety, paid the sum so borrowed; and that when the two hundred dollars was borrowed and paid over to Smith, the husband of the widow, the claim had been placed in the hands of a lawyer for collection. It was also proved that the testator had no children, and that all the legatees and distributees were over the age of twenty-one at the time of his death, except the son of Philibar Barthe who was the residuary legatee. Upon these facts it was contended that the plaintiff could not recover this sum of two hundred dollars in this action, because, he as surety was not liable for it when it was paid, the payment having been made seven years after the execution of the executor's bond, and the renunciation of the will by the widow, and also because the money was borrowed and paid over to the husband of the widow by the executor himself, and not by the plaintiff.

The second section of the act of 1838, limiting actions against sureties, (3 *Stat. Law*, 558,) is relied on as having discharged the plaintiff from all liability for any part of the estate in the hands of the executor, to which the widow was entitled. That section is in the following language: "That from "and after the 1st day of July, 1838, sureties, their

2. The second section of the act of 1838, limiting actions against sureties, (3 *Stat. Law*, 558,) does not apply to cases where there are

"executors, administrators, heirs, and devisees shall
"be discharged from all liabilities, to distributees, de-
"visees and wards, on administration and guardian's
"bonds, when five years shall have elapsed without
"suit after the youngest of the distributees, devisees,
"or wards have attained full age."

When the widow renounced the provisions in her
favor contained in the will of her husband, she be-
came entitled to her distributable portion of her hus-
band's estate, and was the sole distributee, the other
persons interested in the estate being devisees or leg-
atees under the will. It is therefore argued, that as
she was the only distributee, and had attained full age
at the time the executor qualified and executed bond,
that the statute applied, although some of the other
persons interested in the estate as legatees or devi-
sees were still infants. Such an application of the
statute would not, in our opinion, comport with its
true meaning, nor be consistent with the object and
design of the legislature in its enactment. The
statute, it is true, divides distributees, devisees, and
wards, into classes, and seems to make the limitation
apply, when five years shall have elapsed without
suit after the youngest of either class has attained
full age. And where all those who are interested in
the estate in the hands of the personal representa-
tive are distributees, or are all devisees, as they are
denominated by the statute, the case clearly falls
within the letter of the statute. But it was evident-
ly the intention of the legislature, in providing this
limitation for sureties in administration bonds, that
the sureties should remain bound until five years had
elapsed without suit after the youngest of the dis-
tributees or devisees, who might be entitled to a rem-
edy upon the bond, had attained full age; at least
that the sureties should not, by operation of the stat-
ute, be discharged from liability upon the bond pre-
vious to that time. The question is not, whether all
those who claim part of the estate as distributees are
barred by the provisions of the statute, but whether

devisees and distributees, until five years after the youngest of each class, or persons interested, shall arrive at full age.

all the persons interested in the estate, either as dis- tributees or devisees, are barred. If the sureties in the bond remain liable under the statute, to any person who has an interest in the estate in the hands of the personal representative, either as distributee or devisee, the statute does not operate in their favor to any extent, or discharge them from liability to any other claimant, whether such claimant be a distributee or a devisee.

If, therefore, in this case, the sureties in the bond were liable to any one of the devisees who had an interest in the estate in the hands of the executor, at the time the money was paid to the husband of the widow, they were still liable for that part of the estate in his hands, to which the widow was entitled, although, more than five years had elapsed, after the execution of the bond, before the payment was made. Their liability continued, unless it had been shown that all the persons entitled to any part of the estate in the hands of the executor, had attained full age five years anterior to the time of payment.

3. Where a surety of an executor, in his bond, becomes the surety of the executor for money borrowed to pay a distributee or devisee, and the surety pays the borrowed money, it is in effect a payment as surety in the executorial bond.

As it respects the right of the plaintiff to recover the two hundred dollars in the present action, upon his being able to establish the alleged promise of indemnity, it may be remarked that the payment of the money in the first instance was, under the circumstances, substantially a payment by the plaintiff. The demand had been placed in the hands of a lawyer for collection. The executor and the plaintiff executed a joint note to the lawyer for two hundred dollars, and the money was paid over to Smith; the husband of the widow. It is not stated in the bill of exceptions that the lawyer handed the money to the executor, and that he paid it to Smith, the presumption, therefore, is as the demand was in the hands of the lawyer for collection, that he retained it and paid it to his client. The money was then, in effect, paid by the execution of the note to the attorney, and as the the plaintiff paid the note shortly afterwards, the payment of the demand in the first instance

should be regarded as having been made by him, especially if the money was advanced by the lawyer upon the credit of the plaintiff, which might have been inferred from the condition of the executor at the time.

Upon the trial various questions were made in relation to the admission and rejection of testimony. The deposition of Howard Williams, the co-security of the plaintiff in the bond of the executor, was read as evidence by the plaintiff to prove that the defendant had made such a promise to the plaintiff and the witness, as was relied upon in the plaintiff's petition. Objections to the reading of this deposition were made and overruled. The plaintiff had executed a release to the witness, the execution of which was proved on the trial by the subscribing witness thereto, by which he had been discharged from all liability to the plaintiff for contribution as co-security, on account of the payments made by the latter, and which he was attempting to recover of the defendant in this suit. As the witness was, by the release discharged from all liability to the plaintiff for the payments made by him as co-security, he had no interest in the result of this suit, and could derive no advantage from the success of the plaintiff. It did not appear that he had paid anything as the surety of the executor, or had any demand against the defendant growing out of the same contract, and if he had, a verdict and judgment in this case for the plaintiff would not be competent evidence for him, in any action he might bring for it against the defendant, or in any action the defendant might bring against him for contribution. We do not perceive any valid objection to his testimony, and are of opinion that it was properly admitted. No objection on the trial was made to the deposition, because it had not been taken by competent authority or upon proper notice, although it had been objected to upon that ground in the exceptions to it which had been previously filed. But as the evidence before the court, upon that ground

JONES
*vs.*
LETCHER.

4. One surety of an executor who procures another to be bound with him as joint surety, upon his promise to save him harmless, is liable on such promise, and a third surety who is released from responsibility to contribute to the plaintiff in case of loss, is a competent witness to prove the promise.

of objection to it, was not incorporated into the bill of exceptions, we cannot determine that the court erred in overruling the exception.

The plaintiff introduced William Holloway as a witness, and proved by him that he had in his possession evidence consisting of affidavits taken in France, and other documents transmitted from the same country, showing that Segond Barthe sailed from France for some part of South America twenty years ago, and had never been heard from since, although diligent inquiry had been made by letters to and from the part of South America for which she sailed, and that as she was an old lady when she left France, and so much time had since elapsed, without any information that she was living, her relations there supposed that she was dead. And proved by him further, that he had acted as the agent of a Mr. Bartellow, of the city of New York, who had placed in his hands documents and written evidence from France, which the witness then had with him in court, showing that Philibar Barthe, a brother of the testator, never had but one son, and that he was born in the year 1834, and that his father had been appointed his guardian in France, and had authorized Bartellow to collect any money that might be coming to his son from the estate of A. Barthe, deceased. The witness stated that he knew nothing of these matters, except what was stated in the documents from France, and what Bartellow told him. The defendant objected to this evidence, but his objection was overruled.

Andre Barthe, the testator, had bequeathed five hundred dollars to his sister Segond Barthe, and Holloway, the witness, had been appointed her administrator by the Madison county court, in which county the testator, A. Barthe, deceased, had resided at the time of his death. The testator, after having made several specific bequests, devised the residue of all his estate to the sons of his brother Philibar Barthe. Part of the money claimed in this suit by the plain-

tiff had been paid by him to Holloway as the administrator of Segond Barthe, and it became necessary, in order to establish the validity of this payment, to prove the death of Segond Barthe, and in the event the jury should find that she had died in the lifetime of the testator, that the plaintiff should also prove that the residuary legatee was an infant, that his father was his guardian, and that Bartellow was the agent of the guardian.

Whether the documents in the possession of the witness would have been legal testimony or not, if they had been offered in evidence, cannot be decided, as they were not produced. It is clear, however, that the witness was not authorized to testify to facts, the knowledge of which he derived alone from the documents referred to, and communications made to him by Bartellow who acted as agent. The number of the sons of Philibar Barthe, and their ages, and the appointment of the guardian, were all facts easily susceptible of proof. It did not appear that Bartellow had any knowledge of the number or ages of the sons of Philibar Barthe, and if he had, his declarations upon the subject would not have been competent testimony, but he ought to have been called upon to depose as a witness. The law permitting the admission of hearsay evidence in cases of pedigree, restricts it to the declarations of deceased persons, who were related by blood or marriage to the person whose pedigree is in question. (1 *Greenleaf on Evidence*, 116.) The guardian had to be appointed by some competent authority, and his appointment to the office of guardian could not be established or proved by hearsay testimony, nor had the witness any right to depose on the subject, from documents in his hands; but the documents, if legal and proper testimony, should have been read in evidence. For the same reason the testimony, so far as it was used and relied upon to establish the agency of Bartellow, was inadmissible.

5. Hearsay evidence, tho' competent to prove pedigree, is restricted to the statements of deceased persons who were related by blood or marriage to the persons whose pedigree is in question. (1 *Greenleaf on Ev.* 116.) It is not competent to prove who was guardian.

6. Evidence which conduces, though but slightly, to prove a fact in issue, should not be excluded.

The defendant having introduced testimony, the object of which was to show that he had not made the promise of indemnity relied on by the plaintiff, offered, for the same purpose, and as corroborative of the evidence he had adduced, the record of a suit in equity that the plaintiff had previously instituted against him, for contribution as co-security on account of the payment of the two hundred dollars to Smith, the husband of the widow, the whole of which he sought to recover against him in the present action, and which suit the plaintiff had dismissed before this one was commenced. This record was objected to as evidence, by the plaintiff, and the objection sustained, to which decision of the court the defendant excepted.

Any act or declaration of the plaintiff tending to evince the extent of the defendant's liability to him, was certainly competent evidence for the defendant. If the plaintiff claimed that the defendant was liable to him for contribution as co-security, such a claim tended to prove that he was not liable for the whole amount of the money paid. The record offered in evidence proved that the plaintiff had made such a claim. The action had been brought, by petition, which had been sworn to by the plaintiff, and its statements, referring to this demand, were clearly admissible as evidence on the part of the defendant. The court, therefore, erred in excluding this testimony.

And as opposing testimony had been introduced by the parties, as to the fact whether the promise of indemnity relied upon by the plaintiff had been made by the defendant or not, we are of opinion that the defendant should have been allowed to prove, as he offered to do, that the estate of the defendant, when the executor qualified, and the parties became liable as his sureties, exceeded very considerably the whole amount of the testator's estate, being nearly of twice the value, and nearly, if not quite, equal in value, to the joint estates of both the other sureties. The in-

ference deducible from these facts might be, that as the defendant would have been regarded as sufficient security himself in the executor's bond, there existed no motive to induce him to make application to the other sureties to become jointly bound with him, under a promise on his part to indemnify them on account of their liability, and therefore they would furnish ground for a presumption that no such promise had been made. This testimony had, it is true, but a remote and uncertain bearing upon the question in issue between the parties ; still, under the circumstances of the case, it was not wholly irrelevant, and should have been permitted to go to the jury.

A question was raised by the defendant, in relation to the payment made by the plaintiff to the administrator of Segond Barthe, in the event the jury should conclude from the testimony that she had died in the lifetime of the testator. The court decided that if the money thus paid had passed into the hands of the guardian of the residuary devisee, who, according to the provisions of the will of the testator, would have been entitled to it in the contingency mentioned, the liability of the executor and his sureties was thereby discharged to that extent, and the plaintiff who had made the payment as surety had a right to recover it from the defendant, if he had made the promise upon which the action was founded. The principle contained in this proposition is undoubtedly correct. If the legatee died in the lifetime of the testator, without issue, the legacy lapsed, and having fallen back into the estate of the testator, passed to the residuary devisee, as no other disposition of it had been made by any of the provisions of the will. Although, therefore, the money was paid to Holloway as the administrator of Segond Barthe, yet if he paid it to the residuary devisee or any person who had authority to receive it for him, the payment was a valid one, and enured to the benefit of the executor and his sureties, as fully as if the payment had been directly made by him or his sureties to the person to whom it

7. The legatee having died before the testator, a payment to the residuary legatee, to whom the right accrued under the residuary devise, is a valid payment by the executor.

belonged. But although the principle of law was correct, it was not authorized by any legal testimony in the cause; all the evidence upon the subject, as well as that to prove that Segond Barthe was dead, being illegal, and therefore improperly admitted.

Wherefore, for the errors indicated in this opinion, the judgment is reversed, and cause remanded for a new trial in conformity with the principles of this opinion.

*Turner*, for appellant; *Caperton* and *Burnam*, for appellee.